IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOSEPH HILL, Liquidating Tort    §
Trustee for the Premiere         §
Holdings of Texas, L.P.          §
Consolidated Bankruptcy Estate,  §
                                 §
             Plaintiff,          §
                                 §
v.                               §    CIVIL ACTION NO. H-04-2560
                                 §
MANN, FRANKFORT, STEIN & LIPP,   §
ADVISORS, INC., et al.,          §
                                 §
             Defendants.         §

## MEMORANDUM OPINION AND ORDER

Pending before the court are (1) Defendant TD Waterhouse Investor Services, Inc.'s Motion to Dismiss Trustee's Second Amended Adversary Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket Entry No. 14); (2) Mann Frankfort Defendants' Motion to Dismiss Trustee's Second Amended Complaint (Docket Entry No. 15); and (3) Raymond James Defendants' Motion to Dismiss (Docket Entry No. 43). For the reasons discussed below, the court will grant the motions to dismiss of TD Waterhouse and Raymond James and will grant in part and deny in part Mann Frankfort's motion to dismiss.

## I.  Background

In this action plaintiff Joseph Hill, the liquidating tort trustee for the bankruptcy estate of Premiere Holdings of Texas, L.P. ("Premiere"), seeks to recover damages for malpractice and

negligence.    Defendants  include  (1)  TD  Waterhouse  Investor Services,  Inc.  ("TD Waterhouse"),  a  broker-dealer;  (2)  entities collectively referred to as "Mann Frankfort" or the "Mann Frankfort defendants,"[1] which provided Premiere accounting and management advisory  services;  and  (3)  broker-dealer  entities  collectively referred to as "Raymond James" or the "Raymond James defendants."[2]

Premiere  was  formed  by  the  merger  of  investment  companies operated by David Lapin and Jeff Wigginton with a mortgage company, Money  Mortgage  Corporation  of  America,  operated  by  Ted  Russell Schwartz  Murray.   According  to  plaintiff's  Second  Amended  Adversary Complaint,  after  the  merger  Premiere  "continued  the  business"  that the  investment  companies  and  Money  Mortgage  had  been  conducting with  each  other.[3]   This  involved  "funneling  millions  of  [the investment  companies']  clients'  dollars  into  sub-par  mortgages."[4]

Premiere  filed  for  bankruptcy  protection  on  October  2,  2001. Besides  this  action  by  the  trustee,  several  cases  relating  to  the collapse  of  the  mortgage  program  are  pending  in  state  and  federal

_____

[1]Mann,  Frankfort,  Stein  &  Lipp,  Advisors,  Inc.;  Mann, Frankfort, Stein & Lipp, CPAs, L.L.P.; Centerprise Advisors, Inc.

[2]Raymond  James  Financial  Services,  Inc.;  Raymond  James  & Associates,  Inc.;  Raymond  James  Financial,  Inc.;  Robert  Thomas Securities, Inc.

[3]Trustee's  Second  Amended  Adversary  Complaint,  Docket  Entry No. 10, ¶ 22.

[4]Id.

courts.[5]   In those cases investors claim they are entitled to recover from entities that provided assistance or services to Premiere.[6]   The investor cases include the same defendants and causes of action involved in the trustee's action.[7]

In this case TD Waterhouse, Mann Frankfort, and Raymond James have each moved to dismiss the causes of action plaintiff asserts against them because the second amended complaint fails to state a claim upon which relief can be granted.

## II.  <u>Standard of Review</u>

Motions to dismiss for failure to state a claim urged pursuant to Fed. R. Civ. P. 12(b)(6) should not be granted unless, based solely on the pleadings, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 78 S.Ct. 99, 102 (1957); <u>Kapps v. Torch Offshore, Inc.</u>, 379 F.3d 207, 210 (5th Cir. 2004).  In considering a 12(b)(6) motion the court must accept all well-pleaded facts in the complaint as true and view them in the

---

[5]Mann Frankfort Defendants' Motion to Dismiss Trustee's Second Amended Complaint, Docket Entry No. 15, pp. 4-5; Mann Frankfort Defendants' Status Report and Recommendation for Efficient Adjudication of the Premiere Holdings of Texas Litigation ("Mann Frankfort Defendants' Status Report"), Docket Entry No. 31, pp. 2-3.

[6]Mann Frankfort Defendants' Status Report, Docket Entry No. 31, p. 2.

[7]<u>Id.</u>; Mann Frankfort Defendants' Motion to Dismiss Trustee's Second Amended Complaint, Docket Entry No. 15, pp. 4-5.

-3-

light most favorable to the plaintiff.  <u>Baker v. Putnal</u>, 75 F.3d 190, 196 (5th Cir. 1996).   The court cannot look beyond the pleadings.  <u>Id</u>.   <u>See also</u> <u>Spivey v. Robertson</u>, 197 F.3d 772, 774 (5th Cir. 1999).  Pleadings include the complaint and any documents attached to it.  <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 498 (5th Cir. 2000).

The standards governing review of 12(b)(6) motions must be considered in light of the liberal pleading requirements of Fed. R. Civ. P. 8(a).  The Supreme Court has reminded lower courts that a complaint need contain only "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" <u>Swierkiewicz v. Sorema N.A.</u>, 122 S.Ct. 992, 998 (2002) (quoting Fed. R. Civ. P. 8(a)(2)).  The statement must "'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  <u>Id.</u> (quoting <u>Conley</u>, 78 S.Ct. at 103).  This "simplified notice pleading standard" means that, with the exception of a limited set of cases,[8] a plaintiff need not plead facts supporting every element of his claims or legal theories. <u>Id</u>.  <u>See also</u> <u>Conley</u>, 78 S.Ct. at 103.  Instead, liberal discovery rules and summary judgment motions are relied upon "to define disputed facts and issues and to dispose of unmeritorious claims." <u>Swierkiewicz</u>, 122 S.Ct. at 998.  Accordingly, motions to dismiss for failure to state a claim are viewed with disfavor and are

_____

[8]These exceptions are found in Rule 9(b), which provides:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.   Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b).

rarely granted.  <u>S. Christian Leadership Conference v. Sup. Ct. of La.</u>, 252 F.3d 781, 786 (5th Cir. 2001) (quoting <u>Tanglewood East Homeowners v. Charles-Thomas, Inc.</u>, 849 F.2d 1568, 1572 (5th Cir. 1988)).

Although notice pleading does not require a complaint to expound the facts, a plaintiff who does so is bound by such exposition.  <u>Bender v. Suburban Hosp., Inc.</u>, 159 F.3d 186, 192 (4th Cir. 1998) (citing <u>Jefferson v. Ambroz</u>, 90 F.3d 1291, 1296 (7th Cir. 1996)).  "[I]f a plaintiff chooses to 'plead particulars, and they show he has no claim, then he is out of luck -- he has pleaded himself out of court.'"  <u>Jefferson</u>, 90 F.3d at 1296 (quoting <u>Thomas v. Farley</u>, 31 F.3d 557, 558-59 (7th Cir. 1994)).

## III.  <u>Analysis</u>

### A.   TD Waterhouse's Motion to Dismiss

#### 1.  <u>Negligence</u>

Plaintiff alleges claims for negligence and deepening insolvency against TD Waterhouse.[9]  In its motion to dismiss, TD Waterhouse argues that plaintiff has not alleged facts that show it owed a legal duty to Premiere.[10]  TD Waterhouse contends that it did not have a relationship with Premiere that could make it liable for

---

[9]Trustee's Second Amended Adversary Complaint, Docket Entry No. 10, ¶¶ 107-11.

[10]Defendant TD Waterhouse Investor Services, Inc.'s Motion to Dismiss Trustee's Second Amended Adversary Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Memorandum of Law in Support ("TD Waterhouse's Motion to Dismiss"), Docket Entry No. 14, pp. 4-5.

negligently supervising and advising Premiere regarding the
mortgage investment program.[11]   Plaintiff responds that since
federal pleading standards do not require citation of specific
facts, the complaint's assertion that TD Waterhouse owed Premiere
a duty to act as a reasonably competent broker-dealer is sufficient
to avoid dismissal of the negligence claim.[12]   Plaintiff also notes
that TD Waterhouse "cites no cases that hold that broker dealers
owe no duties to the registered investment advisors under them."[13]

Under Texas law negligence consists of three elements: (1) a
legal duty owed by one person to another, (2) a breach of that
duty, and (3) damages proximately resulting from that breach.
Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex.
1990).  "In determining whether a cause of action in negligence
exists, the threshold inquiry is whether the defendant[] owed the
plaintiff[] a legal duty."  Smith v. Merritt, 940 S.W.2d 602, 604
(Tex. 1997).  "[T]he existence of duty is a question of law for the
court to decide from the facts surrounding the occurrence in
question."  Greater Houston Transp. Co., 801 S.W.2d at 525.

In his complaint plaintiff alleges that David Lapin and Jeff

---

[11]Id.

[12]See Plaintiff's Response to TD Waterhouse Investor Services,
Inc.'s Motion to Dismiss Trustee's Second Amended Adversary
Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Memorandum of
Law in Support ("Plaintiff's Response to TD Waterhouse"), Docket
Entry Nos. 16, 18, pp. 2-3.

[13]Id. at 4.

Wigginton, two of the three individuals who formed Premiere, were "employees and agents of the Broker Dealer Defendants."[14]  The complaint also states that the "Lapin & Wigginton" investment companies that eventually became part of the Premiere entity comprised a "branch office of the Broker Dealer Defendants."[15]  These allegations -- taken as true on this motion to dismiss -- appear to be the extent of the complaint's elaboration of a relationship between Premiere and TD Waterhouse.

Under Texas law an employer's duty to supervise employees is owed not to the employees but to third parties who may be injured by the employees' misconduct.  See Castillo v. Gared, Inc., 1 S.W.3d 781, 786 (Tex. App. -- Houston [1st Dist.] 1999, pet. denied); Patino v. Complete Tire, Inc., 158 S.W.3d 655, 660 (Tex. App. -- Dallas 2005, pet. filed).  Under both Texas and federal law broker-dealers are responsible to the investing public for their own misconduct or that of their employees and agents.  See Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1573 (9th Cir. 1990) (recalling the court's earlier acknowledgment that Congress provided for the vicarious liability of a broker-dealer "if [its] representative injures the investor" in order to "ensure the diligence of supervision and control" and thereby to "protect the

---

[14]Trustee's Second Amended Adversary Complaint, Docket Entry No. 10, ¶ 21.

[15]Id.

investing public") (quoting <u>Zweig v. Hearst Corp.</u>, 521 F.2d 1129, 1135 (9th Cir. 1975)); <u>Rochez Bros. v. Rhoades</u>, 527 F.2d 880, 886 (3d Cir. 1975) (observing that "in the broker dealer cases" a "stringent duty to supervise employees does exist" in order "to protect the investing public and make brokers aware of the special responsibility they owe to their customers"); <u>Cook v. Goldman, Sachs & Co.</u>, 726 F.Supp. 151, 155 (S.D. Tex. 1989) (recognizing that "[b]rokerage firms have not been able to avoid secondary liability simply by showing ignorance, purposeful or negligent, of the acts of their registered representatives," because "[t]o do so would contravene Congress's intent to protect the public, particularly unsophisticated investors, from fraudulent practices"); <u>Barnes v. SWS Fin. Services, Inc.</u>, 97 S.W.3d 759, 762-63 (Tex. App. -- Dallas 2003, no pet.) (explaining that the Texas Securities Act imposes joint and several liability on those who control violators of the act "because a control person is in a position to prevent the violation and may be able to compensate the injured investor when the primary violator is not able to compensate him").

Were Premiere an investor, therefore, plaintiff may have had a cognizable claim against TD Waterhouse.  In this case, however, Premiere's creditors -- the clients whose dollars were "funnel[ed]" into the "sub-par mortgages"[16] -- were the investors and thus the

---

[16]Trustee's Second Amended Adversary Complaint, Docket Entry No. 10, ¶ 22.

ones to whom the duty of supervision and control was owed. Plaintiff does not allege that Premiere was a customer of TD Waterhouse. The court has found no precedent stating that an employee or agent has a cause of action against an employer who fails to adequately supervise or advise him in the conduct of that employee's own business affairs.

Plaintiff is correct that he need not plead specific facts to support every element of his claims or legal theories. But the complaint must still show that "'the pleader is entitled to relief.'" Swierkiewicz, 122 S.Ct. at 998 (quoting Fed. R. Civ. P. 8(a)(2)). In deciding whether the complaint does so, the court will accept as true on a motion to dismiss well-pleaded factual allegations and reasonable inferences drawn therefrom. Westfall v. Miller, 77 F.3d 868, 870 (5th Cir. 1996). But the existence of a duty is a legal question for the court to decide.

    2.  Deepening Insolvency

TD Waterhouse also moves to dismiss plaintiff's deepening insolvency claim. It argues that the complaint is conclusory and that plaintiff has failed to allege facts showing that TD Waterhouse was in a position to create an appearance that Premiere was solvent.[17]  In a reply brief, TD Waterhouse also questions

---

[17]TD Waterhouse's Motion to Dismiss, Docket Entry No. 14, pp. 5-6.

whether deepening insolvency is a cause of action under Texas law.[18] Plaintiff argues that "TD Waterhouse has been given fair notice that it is being sued for deepening insolvency on the grounds it created a false appearance of solvency through its acts and omissions."[19] He argues that additional facts need not be pleaded.[20]

It is not clear that Texas law recognizes a cause of action for deepening insolvency.  In Florida Dep't of Ins. v. Chase Bank of Tex., N.A., 274 F.3d 924 (5th Cir. 2001), the Fifth Circuit commented that there is a "trend toward recognizing 'deepening insolvency' as a cause of action against a party who creates the false appearance of solvency in an insurance company or other financial institution."  Id. at 935.  The court also observed, however, that "[t]here do not appear to be any reported *Texas* cases recognizing 'deepening insolvency.'"  Id. (emphasis added).  This statement is still true today.  This court has not found -- and plaintiff has not cited -- any Texas authority that suggests deepening insolvency exists as a cause of action under state law.

Normally, under these circumstances the court would have to decide whether the Texas Supreme Court would recognize deepening

---

[18]Defendant TD Waterhouse Investor Services, Inc.'s Reply to Plaintiff's Response to TD Waterhouse's Motion to Dismiss Trustee's Second Amended Adversary Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), Docket Entry No. 21, p. 5.

[19]Plaintiff's Response to TD Waterhouse, Docket Entry Nos. 16, 18, p. 4.

[20]Id.

insolvency as a cause of action.  See id.  But in this case the court does not have to consider this question because even assuming the cause of action exists, plaintiff cannot survive TD Waterhouse's motion to dismiss.

Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened pleading standard for fraud claims:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Tuchman v. DSC Communications Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); FED. R. CIV. P. 9(b).  This means that a plaintiff bringing a claim based on fraud must allege the "particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'"  Tuchman, 14 F.3d at 1068 (quoting Tel-Phonic Services, Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992)).  A plaintiff bringing a fraud claim must also allege facts sufficient to support an inference of fraudulent intent on the part of the defendant.  Id.  Plaintiff's deepening insolvency claim does not come close to meeting these standards of particularity; the complaint relies on the conclusory assertions that TD Waterhouse, through some unspecified "acts and omissions," created "the false appearance of solvency" in Premiere.[21]

---

[21]See Trustee's Second Amended Adversary Complaint, Docket Entry No. 10, ¶ 110.

Plaintiff argues that "the case at bar is not a fraud case" subject to Rule 9(b).[22]  The court disagrees.  The argument that a deepening insolvency claim is not itself an allegation of fraud conflicts with the very case plaintiff cites when stating in his response to the motion to dismiss that he has properly pleaded the claim.[23]  In <u>Schacht v. Brown</u>, 711 F.2d 1343 (7th Cir. 1983), the court refused to conclude that the Illinois courts would disallow a corporation to "sue to recover damages resulting from the *fraudulent* prolongation of its life past insolvency."  <u>See</u> <u>id.</u> at 1350 (emphasis added).  <u>Schacht</u> involved allegations by the statutory liquidator of an insurance company that the defendants participated in a "multifaceted, fraudulent scheme which kept the [insurance company] operating long past insolvency in a manner which resulted in enormous losses" to the company.  <u>Id.</u> at 1345-46.

In <u>Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.</u>, 267 F.3d 340 (3d Cir. 2001), a case noted by the Fifth Circuit when it observed that there was a trend toward recognizing the cause of action, <u>Florida Dep't of Ins.</u>, 274 F.3d at 935, 935 n.40, the Third Circuit considered whether the Pennsylvania Supreme Court would accept deepening insolvency as a legally cognizable claim for relief.  <u>Official Comm.</u> involved the claim that the defendants had engaged in the "fraudulent expansion of corporate debt and

---

[22]Plaintiff's Response to TD Waterhouse, Docket Entry Nos. 16, 18, p. 5.

[23]See <u>id.</u> at 4.

-12-

prolongation of corporate life," and the court's analysis appeared to equate "deepening insolvency" with the "fraudulent and concealed incurrence of debt." See id. at 347, 349-50. In deciding that the plaintiff stated a valid claim under Pennsylvania law, the court cited a string of cases evidencing a "[g]rowing acceptance of the deepening insolvency theory." Id. at 350. According to the summaries in Official Comm., the cases recognizing deepening insolvency as a cause of action under state law generally refer to the actionable wrong as the fraudulent extension of corporate life. See id. at 350-51.

This court concludes that if deepening insolvency is a cause of action under Texas law, it includes the element of fraud. Because plaintiff has not pleaded deepening insolvency with the particularity required for claims involving fraud, TD Waterhouse's motion to dismiss the deepening insolvency claim will be granted.

3.    Plaintiff's Request for Leave to Amend

At the end of his response opposing dismissal plaintiff requests leave to amend should the court find the complaint deficient.[24] Plaintiff cites Rule 15(a) of the Federal Rules of Civil Procedure for the proposition that "leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a).

The Fifth Circuit recognizes that Rule 15 evinces a bias in

---

[24]Id. at 7.

favor of granting leave to amend.  <u>Goldstein v. MCI Worldcom</u>, 340 F.3d 238, 254 (5th Cir. 2003) (citing <u>S. Constructors Group, Inc. v. Dynalectric Co.</u>, 2 F.3d 606, 611 (5th Cir. 1993); <u>Little v. Liquid Air Corp.</u>, 952 F.2d 841, 846 (5th Cir. 1992)).  However, the Fifth Circuit has also stated that leave to amend under Rule 15 is by no means automatic, <u>id.</u> (citing <u>S. Constructors Group</u>, 2 F.3d at 612), and has upheld the denial of leave to amend when the moving party engaged in undue delay, <u>id.</u> (citing <u>Little</u>, 952 F.2d at 846), or attempted to present theories of recovery serially to the distict court, <u>id.</u> (citing <u>S. Constructors Group</u>, 2 F.3d at 612). The Supreme Court has recognized bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment as plausible reasons for a district court to deny a party's request for leave to amend.  <u>Id.</u> (citing <u>Foman v. Davis</u>, 83 S.Ct. 227, 230 (1962)).

Plaintiff filed "Trustee's Second Amended Adversary Complaint" on September 10, 2004.[25]   In the accompanying motion requesting leave to amend, plaintiff argued that the court should allow filing of the amended complaint because it "adds more detail to the prior complaint without changing any of the substance."[26]   Plaintiff acknowledged that "some Defendants have requested an amendment through their motions for a more definite statement."[27]   Plaintiff has thus already had opportunity to consider the sufficiency of its pleadings and to make any necessary additions or amendments. Plaintiff does not demonstrate in this latest request how he would replead the claims against TD Waterhouse with greater specificity if given the opportunity, does not proffer a proposed third amended complaint, and does not suggest any additional facts not already pleaded that could cure the pleading defects in the claims.   See Goldstein, 340 F.3d at 254-255.   Under these circumstances the court is not persuaded that plaintiff should receive another opportunity to amend his complaint.   See McKinney v. Irving Indep. School Dist., 309 F.3d 308, 315 (5th Cir. 2002) (finding no abuse of discretion in the district court's denial of leave to amend where the plaintiffs failed to submit a proposed amended complaint

---

[25]See Trustee's Second Amended Adversary Complaint, Docket Entry No. 10.

[26]Plaintiff's Motion for Leave to File Plaintiff's Second Amended Adversary Complaint, Docket Entry No. 8, p. 2.

[27]Id.

in a request for leave to amend and failed to alert the court to the substance of any proposed amendment).  Accordingly, plaintiff's request in the alternative for leave to amend will be denied.

**B.   Mann Frankfort's Motion to Dismiss**

1.   <u>Negligence</u>

Plaintiff asserts a series of negligence claims and a deepening insolvency claim against the Mann Frankfort defendants.[28] In its motion to dismiss, Mann Frankfort argues that the <u>in pari delicto</u> doctrine "prevents [plaintiff] from stepping into the shoes of Premiere and seeking recovery for Mann Frankfort's alleged failure to detect Premiere's own alleged fraud."[29]  Mann Frankfort also argues that dismissal is warranted even if plaintiff represents Premiere's creditors in this action because plaintiff lacks standing to bring claims on behalf of creditors and also because creditor-claims against Mann Frankfort cannot satisfy the duty or reliance elements of a negligence cause of action.[30] Plaintiff responds that application of the <u>in pari delicto</u> defense depends on resolution of disputed facts and thus cannot be the

---

[28]Trustee's Second Amended Adversary Complaint, Docket Entry No. 10, ¶¶ 26-61.

[29]Mann Frankfort Defendants' Motion to Dismiss Trustee's Second Amended Complaint, Docket Entry No. 15, p. 2.

[30]<u>Id</u>.

basis of a dismissal under Rule 12(b)(6).[31]  He also argues that the
in pari delicto defense does not apply to this case under Texas or
bankruptcy law.[32]    Finally, plaintiff contends that he is
"empowered" to bring this action as a creditor and would not be
subject to the in pari delicto defense if he chose to do so.[33]

In pari delicto -- literally, "in equal fault" -- is an
equitable defense based on the common law notion that a plaintiff's
recovery may be barred by his own wrongful conduct.  In Matter of
Royale Airlines, Inc., 98 F.3d 852, 855 (5th Cir. 1996).   In
securities cases the Supreme Court has held that an action may be
barred because of the plaintiff's own culpability if (1) as a
direct result of his actions the plaintiff bears at least
substantial responsibility for the violations he seeks to redress,
and (2) preclusion of the suit would not significantly interfere
with the effective enforcement of the laws and protection of the
public.  See id. (quoting Bateman Eichler, Hill Richards, Inc. v.
Berner, 105 S.Ct. 2622, 2629 (1985)).  In Texas the in pari delicto

---

[31]Plaintiff's Response to Mann Frankfort Defendants' Motion to
Dismiss Trustee's Second Amended Complaint, Docket Entry No. 19,
pp. 6-11.

[32]Id. at 12-14, 21-22; Plaintiff's Second Supplemental Response
to Mann Frankfort Defendants' and Raymond James Defendants' Motion
to Dismiss Trustee's Second Amended Complaint, Docket Entry No. 49,
pp. 1-2.

[33]Plaintiff's Response to Mann Frankfort Defendants' Motion to
Dismiss Trustee's Second Amended Complaint, Docket Entry No. 19,
pp. 17, 14-21.

rule is "adopted, not for the benefit of either party and not to punish either of them, but for the benefit of the public." <u>Lewis v. Davis</u>, 199 S.W.2d 146, 151 (Tex. 1947) (stating that the "general rule that denies relief to a party to an illegal contract is expressed in the maxim" <u>in pari delicto</u>). Thus, if public policy "demands it," relief will sometimes be granted "even where the parties are in pari delicto." <u>Id</u>. Application of the <u>in pari delicto</u> defense in Texas "depends upon the peculiar facts and the equities of the case" and consideration of what will "better serve public policy." <u>Id</u>.

Plaintiff argues that the <u>in pari delicto</u> defense does not apply to a bankruptcy trustee.[34] Plaintiff relies on a footnote in <u>In re Schimmelpenninck</u>, 183 F.3d 347 (5th Cir. 1999), where the Fifth Circuit commented that the creditors of a bankrupt entity "should not be tarred with the brush of any pre-filing corporate abuses or wrongdoings by [the entity], its officers, or directors." <u>Id.</u> at 358 n.23. The appellee, who was a creditor of the bankrupt entity, had argued that he, rather than the bankrupt, owned the right to recover from the bankrupt's subsidiary on veil-piercing grounds; since the bankrupt had unclean hands in misusing the corporate form it could not "avail itself of the equitable remedy designed to rectify its own abuse." <u>Id</u>. The Fifth Circuit decided

---

[34]Plaintiff's Second Supplemental Response to Mann Frankfort Defendants' and Raymond James Defendants' Motion to Dismiss Trustee's Second Amended Complaint, Docket Entry No. 49, pp. 1-2.

that "equitable concerns" weighed in favor of liquidation and pro rata distribution of the bankrupt's assets, which included the subsidiary, and against allowing the appellee to "obtain indirectly a very preferential status that he cannot obtain directly." Id. at 358, 358 n.23.  The appellee's argument was "cut down by the blade that creates it:  Equity." Id. at 358 n.23.

The court is not persuaded that In re Schimmelpenninck means that the in pari delicto defense is inapplicable in the bankruptcy context.   The Fifth Circuit's focus on "equitable concerns" suggests that its conclusion was specific to that case rather than an exposition of a broadly applicable rule.   The present case involves a different set of equities.   For example, it does not appear that applying the in pari delicto defense here would result in one creditor gaining a preference over the others or prevent the pro rata distribution of Premiere's assets.   By itself, In re Schimmelpenninck does not preclude Mann Frankfort from raising the in pari delicto defense.

Mann Frankfort argues that plaintiff's own allegations that Premiere engaged in fraud demonstrate that the two parties are in pari delicto.[35]   Mann Frankfort points to a statement in the pleadings that indicates the investment companies operated by Lapin and Wigginton "funnel[ed] millions of their clients' dollars into

---

[35]Mann Frankfort Defendants' Motion to Dismiss Trustee's Second Amended Complaint, Docket Entry No. 15, pp. 6-10.

-19-

sub-par mortgages."[36]  Mann Frankfort also points to representations made by plaintiff in efforts to intervene in a separate, related suit that Premiere lost millions due to "mismanagement" by Murray, Lapin, and Wigginton, "with the participation and assistance of third-party professionals and related entities."[37]  Mann Frankfort also argues that on behalf of Premiere investors in other suits plaintiff's attorneys have alleged that Murray, Lapin, and Wigginton "carried out" a "complex real estate ponzi scheme" "with the participation and assistance of third-party professionals."[38]

According to the Fifth Circuit, there is only "one limited exception" to the rule that a district court must limit its consideration to the complaint on a Rule 12(b)(6) motion to dismiss.  See Scanlan v. Texas A&M University, 343 F.3d 533, 536 (5th Cir. 2003).  In Collins v. Morgan Stanley Dean Witter, 224

---

[36]Id. at 6 (citing Trustee's Second Amended Adversary Complaint, Docket Entry No. 10, ¶ 22).

[37]Mann Frankfort Defendants' Reply to Motion to Dismiss Trustee's Second Amended Complaint, Docket Entry No. 22, p. 3 (quoting Plea in Intervention of Joseph M. Hill, Trustee (Wallace v. Raymond James Financial, Inc., H-02-2304) at ¶ 97, Exhibit A, attached to Mann Frankfort's Motion to Dismiss Trustee's Second Amended Complaint, Docket Entry No. 15; Motion for Leave to Intervene of Joseph M. Hill, Trustee (Wallace v. Raymond James Financial, Inc., H-02-2304) at pp. 1-2, Exhibit B, attached to Mann Frankfort's Motion to Dismiss Trustee's Second Amended Complaint, Docket Entry No. 15).

[38]Mann Frankfort Defendants' Motion to Dismiss Trustee's Second Amended Complaint, Docket Entry No. 15, p. 6 (quoting Plaintiff's Fifth Amended Petition (Bacon v. Mann Frankfort Stein & Lipp Advisors, Inc., Cause No. 02-CV-126329, District Court of Fort Bend County, Texas, 240th Judicial District) at ¶ 24, attached thereto).

F.3d 496 (5th Cir. 2000), the Fifth Circuit approved the district court's consideration of documents attached to the motion to dismiss that had been referred to in the plaintiff's complaint. Id. at 498-99.  The plaintiff had neither objected to nor appealed the district court's consideration of those documents.  Id. at 498. The court noted that other circuits allow documents attached to a defendant's motion to dismiss to be considered part of the pleadings if the documents are referred to in the complaint and are central to the plaintiff's claim.  Id. at 498-99 (quoting Venture Associates Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993).  The Fifth Circuit agreed with this approach, reasoning that "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."  Id. at 499.

The statements made by plaintiff in other suits and by investors who may employ the same attorneys as plaintiff do not fit within the "one limited exception" to the rule -- that the court must confine its analysis to the pleadings when considering a motion to dismiss.  Mann Frankfort does not argue that the documents containing these statements may be appropriately considered under the Collins framework but instead suggests, citing authorities from other circuits, that this court may take notice of proceedings in other courts if they bear a direct relation to

-21-

matters at issue in this case.[39]  However, Mann Frankfort's reliance
on this rule and these non-binding precedents is misplaced.   In
Green v. Warden, 699 F.2d 364 (7th Cir. 1983), for example, the
court recognized it had the power to take "judicial notice" of the
appellant's "extensive record of litigation as well as the subject
matter of his lawsuits." Id. at 369.  The court's purpose was to
consider a proposed injunction by the government that would require
the appellant to "certify to the novelty of his claims" in future
suits.   Id. at 370, 367-70.  In Mack v. South Bay Beer
Distributors, Inc., 798 F.2d 1279 (9th Cir. 1986), the defendant
had asked the district court to take judicial notice of an
unemployment insurance appeals board decision so that the court
could determine whether the decision had a collateral estoppel
effect on the plaintiff's age discrimination claim.  Id. at 1282.
The Ninth Circuit did not find error in the district court's
consideration of such a matter of public record, even though the
consideration took the court outside the pleadings on a motion to
dismiss.  See id.  The other circuit court cases Mann Frankfort
identifies, Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000) and
Watterson v. Page, 987 F.2d 1 (1st Cir. 1993), involved requests by
plaintiffs that certain public records be considered part of their
pleadings.  See Rothman, 220 F.3d at 90-91; Watterson, 987 F.2d at

---

[39]Mann Frankfort Defendants' Reply to Motion to Dismiss
Trustee's Second Amended Complaint, Docket Entry No. 22, pp. 2-3.

3-4.

In the present case Mann Frankfort does not merely ask the court to take judicial notice of other suits and the statements plaintiff or third parties represented by plaintiff's lawyers have made in those cases. Mann Frankfort also urges the court to consider documents filed in other cases to be part of plaintiff's pleadings in this case and then, as district courts must do on a motion to dismiss, to assume the truth of the factual allegations contained therein. Only then could the court determine at this early stage of the case that Premiere was, in fact, equally or substantially at fault for causing the losses of which it complains -- the necessary predicate for applying the <u>in pari delicto</u> defense.

The cases cited by Mann Frankfort provide no support for this argument. In <u>Green</u> it was the fact that the plaintiff had filed so many suits and "all but besieged the federal courts for the past several years" that was important; the court did not take judicial notice as to the truth of any particular allegation found in the "extensive record of litigation." <u>See</u> <u>Green</u>, 699 F.2d at 369-70. Similarly, there is no suggestion in <u>Mack</u> that the district court needed to assume the truth of any factual allegations or conclusions found in the earlier decision in order to determine whether that decision had collateral estoppel effect. <u>See</u> <u>Mack</u>, 798 F.2d at 1282-84. In the other cases the plaintiffs, whom the

standard of review favors, were the parties who asked the court to take notice of records outside the pleadings.  See Rothman, 220 F.3d at 90-91; Watterson, 987 F.2d at 3-4.

Although the court concludes that documents from other cases are not part of plaintiff's pleadings, there is possibly another way they might be considered for the purpose of analyzing the in pari delicto defense in connection with the motion to dismiss. According to the Fifth Circuit, a statement qualifies as a judicial admission if it is (1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which a judgment for the opposing party can be based.  Heritage Bank v. Redcom Laboratories, Inc., 250 F.3d 319, 329 (5th Cir. 2001).  Statements made by third parties, even if represented by plaintiff's attorneys, are not admissions by plaintiff.  See Martinez v. Bally's La., Inc., 244 F.3d 474, 476 (5th Cir. 2001) (stating that "[a] judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them") (emphasis added).  That leaves plaintiff's contention that Murray, Lapin, and Wigginton "mismanag[ed]" Premiere with the assistance of third-party professionals as the only possible judicial admission outside the complaint.  Plaintiff made the statements about the "mismanagement" of Premiere in his attempt to

-24-

intervene in a related case.[40]

Even assuming that plaintiff's statement in the related case was a judicial admission, the court is not persuaded that dismissal on the basis of the _in pari delicto_ defense is appropriate.  The defense of _in pari delicto_ depends on a conclusion that the plaintiff was equally, or at least substantially, responsible for causing the loss of which he complains.  In _In re Dublin Securities, Inc._, 133 F.3d 377 (6th Cir. 1997), the court concluded that the complaint "establishe[d] conclusively" this predicate and, therefore, the "equitable defense of _in pari delicto_ [could] properly be applied in this case to dismiss" claims brought by a bankruptcy trustee against law firms and lawyers that had formerly represented the debtors.  See _id._ at 380.  The court noted that the pleading "concede[d] . . . that the debtors intentionally defrauded their investors" and "admit[ted] . . . that the debtors' own actions were instrumental in perpetrating the fraud." _Id_.  These statements indicated that the "debtors were _at least_ as culpable as the defendants in this matter." _Id._ (emphasis original).

By contrast, the complaint in this action and plaintiff's "mismanagement" statements do not persuade the court that Premiere was equally or substantially responsible for the damages plaintiff seeks to recover from Mann Frankfort.  Under one interpretation the complaint's assertion that the "Lapin & Wigginton companies did

------

[40]See _supra_ note 37 and accompanying text.

-25-

business with Money Mortgage, funneling millions of their clients'
dollars into sub-par mortgages"[41] carries a negative connotation
indicating a fraudulent intent on the part of Premiere and its
operators.  But plaintiff is entitled to a generous reading of the
complaint on this motion to dismiss, and the court is not convinced
that the statement is necessarily an acknowledgment that Premiere
engaged in any intentional wrongdoing.  Similarly, plaintiff's
claim that Premiere lost millions due to "mismanagement" by Murray,
Lapin, and Wigginton, "with the participation and assistance of
third-party professionals and related entities,"[42] does not lead
ineluctably to the conclusion that Premiere bears equivalent/
substantial responsibility for its losses.  A host of potential
reasons aside from misdeeds by Premiere -- including, perhaps, the
negligence of others upon whom Premiere's operators relied -- might
explain why the now-bankrupt entity was mismanaged.  It is also
possible that Murray, Lapin, and Wigginton are indeed responsible
for mismanaging Premiere but that nevertheless the "third-party

---

[41]Trustee's Second Amended Adversary Complaint, Docket Entry
No. 10, ¶ 22.

[42]Mann Frankfort Defendants' Reply to Motion to Dismiss
Trustee's Second Amended Complaint, Docket Entry No. 22, p. 3
(quoting Plea in Intervention of Joseph M. Hill, Trustee (Wallace
v. Raymond James Financial, Inc., H-02-2304) at ¶ 97, Exhibit A,
attached to Mann Frankfort's Motion to Dismiss Trustee's Second
Amended Complaint, Docket Entry No. 15; Motion for Leave to
Intervene of Joseph M. Hill, Trustee (Wallace v. Raymond James
Financial, Inc., H-02-2304) at pp. 1-2, Exhibit B, attached to Mann
Frankfort's Motion to Dismiss Trustee's Second Amended Complaint,
Docket Entry No. 15).

professionals and related entities" bear greater fault for Premiere's losses. Ultimately, these are questions of fact that must be resolved before the effect of the <u>in pari delicto</u> defense can be decided.

Moreover, without further factual development the court cannot address the public policy concerns inherent to the <u>in pari delicto</u> defense. As the court noted above, under Texas law the defense exists only for the benefit of the public; depending on "the peculiar facts and the equities of the case," then, it is possible a plaintiff might prevail on his claims despite bearing equal responsibility for his losses. <u>Lewis</u>, 199 S.W.2d at 151. For all of these reasons, the existence of fact issues prevents application of the <u>in pari delicto</u> defense in resolving Mann Frankfort's motion to dismiss for failure to state a claim.

In arriving at this conclusion the court has not addressed whether plaintiff can bring his claims as a creditor under § 544 of the Bankruptcy Code. <u>See</u> 11 U.S.C. § 544(a)(2) (stating that "[t]he trustee shall have, as of the commencement of the case . . . the rights and powers of . . . a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists"). Plaintiff argues that as a judgment creditor he could, under Texas law, compel the debtor --

-27-

in this case, Premiere -- to turn over to him a cause of action to satisfy the judgment.[43]   Plaintiff does not dispute that the accounting malpractice action "belongs to the debtor."[44]

The court is skeptical of plaintiff's arguments.  Plaintiff has cited no authority in which a trustee chose creditor status and asserted a cause of action that he admits belongs to the debtor. If plaintiff ultimately wishes to pursue his claims as a creditor, he must address certain heretofore inadequately briefed issues. These include:  (1) whether an accounting malpractice claim is subject to turnover under Texas law and (2) whether the in pari delicto defense is applicable regardless of plaintiff's status as debtor or creditor, given that the accounting malpractice cause of action belongs to Premiere and can be asserted by a creditor only as an assignee (in contrast to creditor actions to void transfers, for example).

    2.   Deepening Insolvency

Mann Frankfort also moves to dismiss plaintiff's deepening insolvency claim.[45]   In the second amended complaint, plaintiff

---

[43]Plaintiff's Response to Mann Frankfort Defendants' Motion to Dismiss Trustee's Second Amended Complaint, Docket Entry No. 19, p. 17 (citing TEX. CIV. PRAC. & REM. CODE § 31.002).

[44]See id. at 19.

[45]Mann Frankfort Defendants' Motion to Dismiss Trustee's Second Amended Complaint, Docket Entry No. 15, pp. 22-24.

-28-

claims that "Mann Frankfort, through their acts and omissions, created the false appearance of solvency in Premiere Holdings and its predecessor entities."[46]  Mann Frankfort questions whether the cause of action exists under Texas law and argues that even if it does exist, plaintiff has failed to allege facts that support the claim or that meet the applicable heightened pleading standard.[47]

In his response to the motion to dismiss, plaintiff appears to concede that deepening insolvency is not an "independent cause of action."[48]  He emphasizes that "deepening insolvency is a damage model for the negligence claim at issue" and that he has "alleged deepening insolvency damages as a result of Mann Frankfort's accounting malpractice."[49]

As the court explained in § III.A.2 above, if deepening insolvency exists as a cause of action under Texas law -- and it is not clear that it does -- it is a fraud claim that must be pleaded with particularity under Rule 9(b) of the Federal Rules of Civil Procedure.  Plaintiff alleges deepening insolvency against Mann

---

[46]Trustee's Second Amended Adversary Complaint, Docket Entry No. 10, ¶ 60.

[47]Mann Frankfort Defendants' Motion to Dismiss Trustee's Second Amended Complaint, Docket Entry No. 15, pp. 22-24.

[48]Plaintiff's Response to Mann Frankfort Defendants' Motion to Dismiss Trustee's Second Amended Complaint, Docket Entry No. 19, pp. 23-24.

[49]Id.

Frankfort with the same conclusory language used in the claim against TD Waterhouse, and in opposing dismissal plaintiff does not even attempt to argue that the pleading meets the standards of Rule 9(b). Accordingly, the court will dismiss the deepening insolvency claim against Mann Frankfort.

**C.   Raymond James' Motion to Dismiss**

   1.   Negligence

Plaintiff alleges negligence and deepening insolvency against the Raymond James defendants.[50]   As to the negligence claim, plaintiff asserts that Raymond James owed Premiere a "duty to exercise the degree of care, skill and competence" of a "reasonably competent Broker Dealer" and that Raymond James breached this duty by "negligently advising and supervising" Premiere and "their own agents and employees."[51]   In its motion to dismiss Raymond James argues that it did not owe to Premiere a duty to supervise and that it has established the in pari delicto defense.[52]   Plaintiff concedes that he is "not a securities purchaser" but reasons that Raymond James owed Premiere a duty because, among other things,

---

[50]Trustee's Second Amended Adversary Complaint, Docket Entry No. 10, ¶¶ 86-106, 110-11.

[51]Trustee's Second Amended Adversary Complaint, Docket Entry No. 10, ¶¶ 86-88.

[52]Raymond James Defendants' Motion to Dismiss, Docket Entry No. 43, pp. 3-7.

Raymond James "willingly incurred the risk of harming Premiere."[53]

As to the in pari delicto defense, Raymond James adopts the same position as Mann Frankfort.[54]  For the reasons stated in § III.B.1 above, the court will not apply the in pari delicto defense to dismiss plaintiff's negligence claim.  Raymond James' other argument, however, merits further analysis.

As the court noted above in § III.A.1, the complaint alleges that Lapin and Wigginton, two of the three individuals who formed Premiere, were "employees and agents of the Broker Dealer Defendants" and that the "Lapin & Wigginton" investment companies that eventually became part of the Premiere entity comprised a "branch office of the Broker Dealer Defendants."[55]  The complaint also alleges that Raymond James "reviewed and approved" the actions of its "registered representatives" Lapin and Wigginton and that it negligently advised the Lapin & Wigginton companies regarding securities issues and did not "properly audit its branch office . . . run by Lapin & Wigginton out of Premiere Holdings."[56]

The court concludes that even if true these facts do not

---

[53]Plaintiff's Response to Raymond James Defendants' Motion to Dismiss, Docket Entry No. 44, pp. 1-4.

[54]See Raymond James Defendants' Motion to Dismiss, Docket Entry No. 43, pp. 5-7.

[55]Trustee's Second Amended Adversary Complaint, Docket Entry No. 10, ¶ 21.

[56]See id. at ¶¶ 86-106.

-31-

establish that Raymond James owed a duty to Premiere.  As far as
the court can tell, plaintiff has not alleged that Raymond James
and Premiere had anything other than an employment relationship.
As explained in § III.A.1, an employer's duty to supervise its
employees is owed not to the employees themselves but to third
parties who may be injured by the employees' misconduct.
Furthermore, as explained in § III.A.1, federal and state law is
clear that broker-dealers are responsible to the investing public,
not necessarily to their own employees.  Perhaps in a telling
statement plaintiff actually references these third parties and
investors by alleging in the complaint that "Raymond James analyzed
the mortgage business in which Lapin & Wigginton were involved *on
behalf of Raymond James clients* and approved of the activity."[57]
It is these clients who may have cognizable claims against Raymond
James if the allegations in the complaint are true.

Plaintiff uses factors identified by the Texas Supreme Court
in Greater Houston Transp. Co. v. Phillips, 801 S.W.2d at 525, to
argue that Raymond James' duty to "advise and supervise" extended
not just to investors but also to its employees.[58]   In Greater
Houston Transp. Co., the Court stated that "several interrelated
factors, including the risk, foreseeability, and likelihood of

---

[57]Id. at ¶ 95 (emphasis added).

[58]Plaintiff's Response to Raymond James Defendants' Motion to
Dismiss, Docket Entry No. 44, pp. 2-4.

injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant" determine "whether the defendant was under a duty." Id. Irrespective of these factors, however, the court is convinced that Raymond James did not owe Premiere the duty that plaintiff alleges it owed. Plaintiff has not cited any authority that imposes on an employer a duty to supervise an employee for the sake of that employee's own business success or economic well-being, while Raymond James points to several cases that discuss, as plaintiff acknowledges, broker-dealers' duty to supervise for the benefit of the investing public.[59] This dichotomy in the law -- apparent silence on the one hand, clear recognition of a duty on the other -- suggests that courts and legislatures have chosen not to extend to employees the benefits of the duty that plaintiff urges this court to recognize. Plaintiff does not contend that injured investors are inadequately equipped by law to recover for losses caused by a broker-dealer's negligence in overseeing or advising its employees or offices. Plaintiff also fails to explain why it is necessary, in light of specifically identified causes of action belonging to investors or securities purchasers, to recognize an additional duty owed by employers to their employees or branch offices.

---

[59] See id. at 1-4.

2.  <u>Deepening Insolvency</u>

The Raymond James defendants also move to dismiss plaintiff's deepening insolvency claim.[60]  They note that there are no reported Texas cases recognizing deepening insolvency as a cause of action and argue that even if the claim exists, plaintiff has not pleaded it with the particularity required for claims alleging fraud.[61]  In his response, plaintiff rests on the arguments he made in his opposition to Mann Frankfort's motion to dismiss.[62]

Grouping Raymond James with TD Waterhouse, plaintiff pleads the deepening insolvency claim against both collectively, using the conclusory language noted above in § III.A.2.[63]  The court has already stated it will dismiss the claim against TD Waterhouse, and the same ruling is warranted here.  For the reasons discussed in §§ III.A.2 and III.B.2, the court will dismiss the deepening insolvency claim against Raymond James.

## IV.  <u>Conclusions and Order</u>

The court concludes that plaintiff has failed to state claims for negligence and deepening insolvency against defendant TD

---

[60]Raymond James Defendants' Motion to Dismiss, Docket Entry No. 43, pp. 7-8.

[61]<u>Id.</u> at 8.

[62]Plaintiff's Response to Raymond James Defendants' Motion to Dismiss, Docket Entry No. 44, p. 4.

[63]Trustee's Second Amended Adversary Complaint, Docket Entry No. 10, ¶¶ 110-11.

Waterhouse and the Raymond James defendants. As to the Mann Frankfort defendants, the court is persuaded that plaintiff has properly alleged claims for negligence but fails to plead a deepening insolvency cause of action.

Accordingly, Defendant TD Waterhouse Investor Services, Inc.'s Motion to Dismiss Trustee's Second Amended Adversary Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Docket Entry No. 14) is **GRANTED**, Mann Frankfort Defendants' Motion to Dismiss Trustee's Second Amended Complaint (Docket Entry No. 15) is **GRANTED in part** and **DENIED in part**, and Raymond James Defendants' Motion to Dismiss (Docket Entry No. 43) is **GRANTED**.

**SIGNED** at Houston, Texas, on this the 10th day of June, 2005.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE